1  Pamela Carroll Calvet, SBN 112612
2  Daria Dub Carlson, SBN 150628
   **BRYAN CAVE LEIGHTON PAISNER LLP**
3  120 Broadway, Suite 300
   Santa Monica, California 90401-2386
4  Telephone: (310) 576-2100
5  Facsimile: (310) 576-2200
   Email: pccalvet@bclplaw.com
6          daria.carlson@bclplaw.com
7
8  Allison C. Eckstrom, SBN 217255
   **BRYAN CAVE LEIGHTON PAISNER LLP**
9  3161 Michelson Drive, Suite 1500
   Irvine, California 92612-4414
10 Telephone: (949) 223-7000
   Facsimile: (949) 223-7100
11 Email: allison.eckstrom@bclplaw.com
12
   Attorneys for Defendant
13 Saia Motor Freight Line, LLC

14              **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16
17 EDWIN JUAREZ, individually and on       Case No.
   behalf of all others similarly situated,
18                                         (Alameda County Superior Court
                      Plaintiffs,          Case No. RG20061154)
19
         vs.                               CLASS ACTION
20
   SAIA MOTOR FREIGHT LINE LLC, a          **NOTICE OF REMOVAL OF CIVIL
21 Louisiana Limited Liability company,    ACTION BY DEFENDANT SAIA
   and DOES 1 through 50, Inclusive,       MOTOR FREIGHT LINE LLC**
22
                      Defendants.          **[CLASS ACTION FAIRNESS ACT
23                                         JURISDICTION]**

24                                         **[28 U.S.C. §§ 1332, 1441, 1446, AND
                                           1453]**
25
                                           *[Filed concurrently with Declarations of
26                                         Eileen Pontiff and Stephanie
                                           Maschmeier; Civil Cover Sheet;
27                                         Certification of Interested Entities; and
                                           Corporate Disclosure Statement]*
28

*Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401*

**NOTICE OF REMOVAL BY DEFENDANT**

1   **TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT**

2   **COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO**

3   **PLAINTIFF EDWIN JUAREZ AND HIS ATTORNEYS OF RECORD:**

4   **PLEASE TAKE NOTICE** that Defendant Saia Motor Freight Line LLC

5   ("Defendant") hereby removes the above-entitled action from the Superior Court of the

6   State of California for the County of Alameda to the United States District Court for the

7   Northern District of California under the Class Action Fairness Act ("CAFA"), pursuant to

8   28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, on the grounds that: (1) Plaintiff Edwin

9   Juarez ("Plaintiff") is a "citizen of a State different from" Defendant; (2) "the matter in

10  controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs;" and

11  (3) "the number of members of all proposed plaintiff classes in the aggregate is" more than

12  100.

13  **PROCEDURAL BACKGROUND**

14  1.      On May 11, 2020, Plaintiff commenced a class-action lawsuit against

15  Defendant in the Superior Court of the State of California for the County of Alameda,

16  entitled "*Edwin Juarez, individually and on behalf all others similarly situated, Plaintiff*

17  *vs. Saia Motor Freight Line LLC, a Louisiana Limited Liability Company; and Does 1-50,*

18  *inclusive, Defendant*," Case No. RG20061154.

19  2.      On June 9, 2020, Plaintiff personally served the following documents on

20  Defendant's agent for service of process, CT Corporation System, Los Angeles: (a)

21  Summons; (b) Complaint; (c) Civil Case Cover Sheet; (d) and Notice of Hearing; true and

22  correct copies of which are attached hereto as "**Exhibits A-D, respectively**." (Declaration

23  of Stephanie Maschmeier ("Maschmeier Decl."), ¶ 3).

24  3.      On July 7, 2020, Defendant filed its Answer to Plaintiff's Complaint, a true

25  and correct copy of which is attached hereto as "**Exhibit E**."

26  4.      Exhibits A through E to this Notice of Removal constitute all pleadings,

27  process and orders served in this action at the time of removal.

28  5.      Plaintiff's Complaint defines the putative class as "All persons who are or

**BRYAN CAVE LEIGHTON PAISNER LLP**
**120 BROADWAY, SUITE 300**
**SANTA MONICA, CALIFORNIA 90401**

1

**NOTICE OF REMOVAL BY DEFENDANT**

1  have been employed by Defendants as Non-Exempt Employees or equivalent positions,
2  however titled, in the state of California within four (4) years from the filing of the
3  Complaint in this action until its resolution." (Complaint, ¶ 10.)

4       6.    Plaintiff alleges the following causes of action against Defendant on behalf
5  of himself and the proposed putative class: (1) Failure to Pay Wages Including Overtime as
6  Required by Labor Code §§ 510 and 1194; (2) Failure to Provide Meal Periods as
7  Required by Labor Code §§ 226.7, 512 and IWC Wage Orders; (3) Failure to Provide Rest
8  Periods as Required by Labor Code §§ 226.7, 512; (4) Failure to Pay Timely Wages
9  Required by Labor Code § 203; (5) Failure to Provide Accurate Itemized Wage Statements
10  as Required by Labor Code § 226; (6) Failure to Reimburse Expenses as Required by
11  Labor Code § 2802; and (7) Violation of Business & Professions Code § 17200, et seq.

12       7.    Defendant denies Plaintiff's claims and makes no admission by way of this
13  removal.

14  **REMOVAL IS TIMELY**

15       8.    A case may be removed at any time, provided that neither of the two 30-day
16  periods under 28 U.S.C. § 1446(b)(1) and (b)(3) has been triggered. *Roth v. CHA*
17  *Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013).

18       9.    28 U.S.C. § 1446(b)(1) provides that, "[t]he notice of removal of a civil
19  action or proceeding shall be filed within 30 days after the receipt by the defendant,
20  through service or otherwise, of a copy of the initial pleading setting forth the claim for
21  relief upon which such action or proceeding is based . . . ." "[N]otice of removability
22  under § 1446(b)(1) is determined through examination of the four corners of the applicable
23  pleadings[.]" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005).

24       10.    Here, the Complaint does not "reveal on its face the facts necessary for
25  federal court jurisdiction." *Rea v. Michaels Stores, Inc.*, 742 F.3d 1234, 1238 (9th Cir.
26  2014) (quoting *Harris*, 425 F.3d at 691–92). In fact, the Complaint expressly denies facts
27  pertinent to removability and alleges that, "the California Superior Court … has
28  jurisdiction in this matter because the individual claims of the members of the Classes

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

2

herein are under the seventy-five thousand dollar ($75,000.00) jurisdictional threshold for Federal Court and the aggregate claim, including attorneys' fees, is under the five million dollar ($5,000,000.00) threshold of the Class Action Fairness Act of 2005…"  (Complaint, ¶ 4.)  As such, removability cannot be determined based on the initial pleading, and the 30-day clock is not triggered under § 1446(b)(1).

11.    Plaintiff also never served Defendant with any "other paper" sufficient to trigger the second 30-day clock.  28 U.S.C. § 1446(b)(3).

12.    Therefore, because neither of the two 30-day periods under 28 U.S.C. § 1446(b)(1) and (b)(3) has been triggered, removal is timely.

13.    Nonetheless, Defendant removed this action within 30 days of being served with the initial pleading on June 8, 2020, so there can be no question that removal is timely.

## JURISDICTION

## PLAINTIFF'S COMPLAINT IS SUBJECT TO REMOVAL UNDER CAFA

14.    The Court has original jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA").  As such, this action may be removed to this Court by Defendant pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453.

15.    Under CAFA, the federal district court has jurisdiction if:

    a)    There are at least 100 class members in all proposed plaintiff classes; and

    b)    The combined claims of all class members exceed $5 million exclusive of interest and costs; and

    c)    Any class member (named or not) is a citizen of a different state than any defendant.  28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a).

A.    The Diversity Of Citizenship Requirement Is Satisfied

16.    **Plaintiff is A Citizen of California**.  A person is a "citizen" of the state in which he is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A person's domicile is the place he resides with the intention to remain or to which

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

NOTICE OF REMOVAL BY DEFENDANT

he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiff alleges that he "was at all times relevant to this action, a resident of California." (Complaint, ¶ 6.) Defendant's records reflect that Plaintiff has been employed by Defendant as a City Driver in the State of California since May 21, 2012. (Declaration of Eileen Pontiff ("Pontiff Decl."), ¶ 6.) Plaintiff has worked for Defendant at its Oakland terminal, located in San Leandro, California. (Pontiff Decl., ¶ 6.) According to Defendant's records, Plaintiff currently resides, and at the time this action was commenced resided, in Newark, California. (Pontiff Decl., ¶ 6.) Therefore, Plaintiff resided in California at the time the action was commenced and intended to remain there. As such, Plaintiff is and, at all times since the commencement of this action has been, a resident and citizen of California.

17.    **Defendant Saia Motor Freight Line, LLC is Not a Citizen of California**. At the time of the filing of this action, Defendant was, and still is, a Louisiana limited liability company. (Maschmeier Decl., ¶ 2.) As a limited liability company, Defendant is deemed to be a citizen of any state where a member is a resident or citizen. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

18.    The sole member of Saia Motor Freight Line, LLC is, and was at the time this action was filed, Saia, Inc. (Maschmeier Decl., ¶ 2.)

19.    At the time of the filing of this action, Saia, Inc. was, and still is, a corporation incorporated under the laws of the State of Delaware with its principal place of business in the State of Georgia. (Maschmeier Decl., ¶ 2.)

20.    Pursuant to 28 U.S.C. § 1332(c), a corporation shall be deemed to be a citizen of any state by which it has been incorporated and of the state where it has its principal place of business. The Supreme Court has established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction. *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). The Court held that the "'principal place of business' [as set forth in section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

**NOTICE OF REMOVAL BY DEFENDANT**

activities." *Id.* at 92-93. The Court further clarified that the principal place of business was the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination." *Id.* at 93; see also *Montrose Chemical v. American Motorists Ins. Co.*, 117 F.3d 1128, 1134 (9th Cir. 1997) (holding that a corporation's principal place of business is the state in which it performs a substantial predominance of its corporate operations and, when no state contains a substantial predominance of the corporation's business activities, then the corporation's principal place of business is the state in which the corporation performs its executive and administrative functions.)

21.    Saia, Inc.'s corporate headquarters are located in Johns Creek, Georgia where its officers direct, control and coordinate Saia, Inc.'s activities. (Maschmeier Decl., ¶ 2.) Saia, Inc.'s operations are managed from this location, including but not limited to, those operations relating to administering company-wide policies and procedures, legal affairs, and general business operations. (*Id.*) Therefore, for diversity purposes, Saia, Inc. is a citizen of Delaware and Georgia.

22.    **The Citizenship of "Doe Defendants" Must Be Disregarded.** The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal. 28 U.S.C. § 1441(a).

23.    The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the citizenship of at least one putative class member is diverse from the citizenship of at least one defendant. 28 U.S.C. § 1332(d)(2)(A). Plaintiff, a putative class member, is a citizen of California. (Pontiff Decl., ¶ 6; Complaint, ¶ 6.) Defendant is a citizen of Delaware and Georgia. (Maschmeier Decl., ¶ 2.) The citizenship of "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1). Therefore, the requisite minimal diversity exists between the parties.

B.    There Are At Least 100 Class Members In A Limited Class Of City Drivers

24.    Plaintiff alleges, "Plaintiff estimates there are in excess of one hundred Non-Exempt Employees who work or have worked for Defendants over the last four years"

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

NOTICE OF REMOVAL BY DEFENDANT

1    (Complaint, ¶ 7), and that, "While the exact number of Class members is unknown to

2    Plaintiff at this time, Plaintiff are (sic) informed and believe and thereon alleges that there

3    are at least 100 (one hundred) Class members." (Complaint, ¶ 15.)

4        25.    Plaintiff was employed by Saia as a City Driver.   (Pontiff Decl., ¶ 6).

5    Notwithstanding, Plaintiff purports to represent a putative class comprised of not only City

6    Drivers but also all non-exempt employees employed by Saia in the State of California

7    during the Class period.   Saia's hourly employees include not only City Drivers like

8    Plaintiff, but also Line Haul Drivers, full and part time dockworkers, mechanics,

9    maintenance and clerical workers.  (Pontiff Decl., ¶ 2.)  Although Plaintiff contends that all

10   of these categories of employees are similarly situated, Defendant disputes this contention

11   and intends to vigorously oppose certification on this basis.  As such, **Defendant limits its**

12   **jurisdictional analysis of the amount in controversy to the City Drivers who worked**

13   **for Saia during the Class period.**

14       26.    At least 525 City Drivers are encompassed by the putative class.  (Pontiff

15   Decl., ¶ 12.)  As such, the "100 Class Members" prong of the CAFA test is easily satisfied.

16       C.    The Requisite $5 Million Amount In Controversy Is Satisfied For The

17             Limited Class Of City Drivers[1]

18       27.    Based on the allegations in the Complaint, and the *very conservative*

19   assumptions below, the alleged amount in controversy for the limited Class of City Drivers

20   only easily exceeds, in the aggregate, $5 million.

21           a.    **Unpaid Meal Period Premiums**

22       28.    Plaintiff alleges that he and the putative Class members were "regularly

23   required to work shifts without being provided all of their legally required meal periods."

24   _____

25   [1] In alleging the amount in controversy for purposes of CAFA removal, Defendant does
     not concede in any way that the allegations in the Complaint are accurate, or that Plaintiff
26   is entitled to any of the monetary relief requested in the Complaint.  Nor does Defendant
     concede that any or all of the putative class members, and specifically the City Drivers, are
27   entitled to any recovery in this case, or are appropriately included in the putative class.

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

**NOTICE OF REMOVAL BY DEFENDANT**

1  (Complaint, ¶ 60.)  Plaintiff further alleges, on information and belief, that "Defendants
2  implemented a policy and practice which resulted in systematic and class-wide violations
3  of the Labor Code," and that "Defendants' violations have been widespread throughout the
4  liability period…" (*Id.*)

5      29.     Under California law, employees who are denied the opportunity to take
6  proper meal periods are entitled to one hour of premium pay for each day that a meal
7  period is not authorized or permitted. Labor Code § 226.7.  Meal period claims are
8  properly considered in determining the amount in controversy for CAFA jurisdiction.  *See,*
9  *e.g., Muniz v. Pilot Travel Ctr. LLC*, 2007 WL 1302504, *4 (E.D. Cal. 2007); *Helm v.*
10  *Alderwoods Group, Inc.*, 2008 WL 2002511, *8 (N.D. Cal. 2008).

11     30.     Plaintiff alleges that Defendant's policies, activities, and actions as alleged in
12  the Complaint, which include the alleged failure to provide meal periods, constitute unfair
13  competition within the meaning of Business and Professions Code Section 17200.
14  (Complaint, ¶ 86.)  The statute of limitations for such a claim is four (4) years.  Cal. Bus.
15  & Prof. Code § 17208.  Accordingly, the measure of alleged potential damages for the
16  meal break claim is based on a four-year limitations period.

17     31.     Defendant denies that it failed to provide Plaintiff and the Class members
18  legally compliant meal breaks.  Notwithstanding, for purposes of removal, Defendant
19  assumes a violation rate of twenty percent (20%), or the equivalent of one missed meal
20  period per putative City Driver Class member per workweek.  This is reasonable, as
21  numerous courts have held that an estimate of one meal period violation per workweek is
22  proper when a plaintiff alleges that the violation occurred "regularly" or as a result of a
23  "pattern and practice."  *See Campbell v. Vitran Exp., Inc.*, 471 Fed. Appx. 646, 649 (9th
24  Cir. 2012) (finding an assumption that "each claimant missed at least one rest break and
25  one meal break per week" was adequately supported by the complaint where the complaint
26  alleged that defendant "regularly and consistently failed to provide uninterrupted meal and
27  rest periods"); *Danielsson v. Blood Centers of Pac.,* No. 19-CV-04592-JCS, 2019 WL
28  7290476 at *6 (N.D. Cal. Dec. 30, 2019) ("Defendant's first assumption—a 20% violation

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

NOTICE OF REMOVAL BY DEFENDANT

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

1  rate for meal and rest breaks during the putative class period—is reasonable given the

2  allegations of a 'pattern and practice' of such violations."); *Miller v. A-1 Express Delivery*

3  *Servs., Inc.*, No. 16-CV-06251-WHO, 2017 WL 462406, at *5 (N.D. Cal. Feb. 3, 2017)

4  (explaining that courts in this district have held that "assumptions of one missed meal and

5  break per pay period are reasonable in light of policy and practice allegations and

6  allegations that [a] defendant[] 'regularly' denied class member breaks"); *Garza v.*

7  *Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (finding the

8  defendant's "assumption of one violation per week is reasonable based on the allegations

9  of the SAC" that the defendant regularly failed to provide meal breaks and had a "pattern

10  and practice" of failing to provide those breaks.) *Arreola v. Finish Line*, 2014 WL

11  6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding that pleading "regular or consistent

12  practice" supports assumption that every class member "experienced at least one violation

13  once per week").

14      32.    Assuming Plaintiff and the putative City Driver Class members were denied

15  the opportunity to take a compliant meal breaks twenty percent of the time, the total

16  amount of unpaid meal break premiums placed in controversy for City Driver Class

17  members during the class period would exceed **$1,599,951.01** (i.e., $26.99 [regular hourly

18  rate during Class period] x 296,397 [number of work shifts] x 20% [one violation per

19  workweek].  (See Pontiff Decl., ¶ 12.)

20              **b.    Unpaid Rest Period Premiums**

21      33.    Plaintiff alleges on information and belief, that Plaintiff and the putative

22  Class members "were systematically not authorized and permitted to take one net ten-

23  minute paid, rest period for every four hours worked or major fraction thereof"

24  (Complaint, ¶ 37), and that "Defendants maintained and enforced scheduling practices,

25  policies, and imposed work demands that frequently required Plaintiff and Class members

26  to forego their lawful, paid rest periods…" (Complaint, ¶ 38).  Plaintiff further alleges that

27  "Defendants implemented a policy and practice which resulted in systematic and class-

28  wide violations of the Labor Code…Defendant's violations have been widespread

NOTICE OF REMOVAL BY DEFENDANT

throughout the liability period." (Complaint, ¶ 65.)

34.     Under California law, employees who are denied the opportunity to take proper rest periods are entitled to one hour of premium pay for each day that a rest period is not authorized or permitted. *See Marlo v. United Parcel Service, Inc.,* 2009 WL 1258491, *7 (C.D. Cal. 2009). Rest period claims are properly considered in determining the amount in controversy. *See, e.g., Muniz, supra,* 2007 WL 1302504, *4 (E.D. Cal. 2007); *Helm, supra,* 2008 WL 2002511, *8 (N.D. Cal. 2008).

35.     Plaintiff alleges that Defendant's policies, activities, and actions as alleged in the Complaint, which include the alleged failure to authorize and permit legally compliant rest periods, constitute unfair competition within the meaning of Business and Professions Code Section 17200. (Complaint, ¶ 86.) The statute of limitations for such a claim is four (4) years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of alleged potential damages for the rest break claim is based on a four-year limitations period.

36.     Defendant denies that it failed to authorize and permit Plaintiff and the Class members to take legally compliant rest breaks. Notwithstanding, for purposes of removal, Defendant assumes that City Driver Class members were not provided a compliant rest break during twenty percent (20%) of their shifts, or the equivalent of once per workweek. This is reasonable, as numerous courts have held that an estimate of one rest period violation per workweek (or 20% of shifts) is proper when a plaintiff alleges that the violation occurs as the result of a pattern or practice. *See Danielsson, supra,* at *6 (N.D. Cal. Dec. 30, 2019) ("Defendant's first assumption—a 20% violation rate for meal and rest breaks during the putative class period—is reasonable given the allegations of a 'pattern and practice' of such violations."; *Miller, supra,* 2017 WL 462406, at *5 (N.D. Cal. Feb. 3, 2017) (explaining that courts in this district have held that "assumptions of one missed meal and break per pay period are reasonable in light of policy and practice allegations and allegations that [a] defendant[] 'regularly' denied class member breaks"); *Byrd v. Masonite Corp.,* 2016 WL 2593912, *5 (C.D. Cal. May 5, 2016) (allegations of a systematic practice supports the "assumption that each class member missed one meal period and one rest

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

period per week"); *Garza, supra,* 178 F.Supp.3d at 911 (N.D. Cal. 2016) ((The defendant's "assumption of one violation per week is reasonable based on the allegations of the SAC" that the defendant regularly failed to provide rest breaks and had a "pattern and practice" of failing to provide those breaks.); *Campbell v. Vitran Exp., Inc.,* 471 Fed. Appx. 646, 649 (9th Cir. 2012) (finding an assumption that "each claimant missed at least one rest break and one meal break per week" was adequately supported by the complaint where the complaint alleged that defendant "regularly and consistently failed to provide uninterrupted meal and rest periods")*; Arreola v. Finish Line,* 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding that pleading "regular or consistent practice" supports assumption that every class member "experienced at least one violation once per week").

37.     Assuming Plaintiff and the putative City Driver Class members were not authorized or permitted to take a compliant rest break during twenty percent of their shifts, the total amount of unpaid meal break premiums placed in controversy for City Driver Class members during the class period would exceed **$1,599,951.01** (i.e., $26.99 [regular hourly rate during Class period] x 296,397 [number of work shifts] x 20% [one violation per workweek].  (See Pontiff Decl., ¶ 12.)

### c.     Failure to Timely Pay Wages

38.     Plaintiff alleges that, "During the relevant time period, Defendants willfully failed and refused, and continue to fail and refuse, to pay Plaintiff and Class members their wages, earned and unpaid, either at the time of discharge, or within seventy-two (72) hours of their voluntarily leaving Defendants' employ."  (Complaint, ¶ 70.)  Plaintiff alleges this failure occurred, in part, due to the other alleged violations (Complaint, ¶ 42), such as failure to pay for missed meal and rest breaks.

39.     Plaintiff seeks penalties pursuant to Labor Code § 203 for all putative class members who were terminated or resigned in an amount equal to their daily wage times thirty (30) days.  (Complaint, ¶¶ 69, 71.)

40.      The statute of limitations for penalties under California Labor Code § 203 is three (3) years.  *See* Cal. Civ. Proc. Code § 338(a).

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

41.    The number of putative City Driver Class members who stopped working for Defendant in the last three years (between May 11, 2017 and June 8, 2020) is at least 123. (Pontiff Decl., ¶ 10.)   Defendant's calculations do not include any City Drivers who terminated employment in the last thirty days (after June 8, 2020). *Id.*  Accordingly, any putative City Driver Class member who stopped working for Defendant during the relevant time period is entitled to 30 days' continuation of wages as a penalty under California Labor Code section 203. *See Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *4 (N.D. Cal. Apr. 5, 2019) ("By tying the unpaid final wage claim to his other claims, [the plaintiff] makes [the defendant's] assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed [the defendant] during the statutory period was due unpaid wages; *Garza, supra,* 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (approving a 100% violation rate for waiting time penalty calculations); *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *6 (N.D. Cal. Sept. 2, 2016) (concluding that the reasonably assumed "violations of the Labor Code for at least one hour of unpaid overtime per five day work period, as well as at least one unpaid rest and one unpaid meal break" "support waiting time penalties [at 100% violation rate]"); *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, *4-6 (N.D. Cal. 2013) ("As to the waiting time claims, the court finds that Defendants' calculations" of thirty-days of waiting time penalties for each putative class member terminated during the statute of limitations "are supported by Plaintiffs' allegations and are a reasonable estimate of the potential value of the claims.").

42.    Thus, according to Plaintiff's allegations, the amount placed in controversy for waiting time penalties for former putative City Driver Class members is at least **$957,574.93** (*i.e.* 123 [number of putative class members who stopped working for Defendant between May 11, 2017 and June 8, 2020] x 9.02 [average length of daily shift based on Defendant's records indicating average of 45.10 hours worked per workweek (Pontiff Decl., ¶ 13)] x $28.77 [average hourly rate from May 11, 2017 through June 8,

NOTICE OF REMOVAL BY DEFENDANT

1    2020 based on 3 year statute of limitations period (Pontiff Decl., ¶ 10)] x 30 days [waiting

2    time penalty period].

3        **e.    Failure To Provide Accurate Itemized Wage Statements**

4        43.    Plaintiff alleges that Defendant "failed to provide accurate, lawful itemized

5    wage statements to Plaintiff and the Class Members in part because of the above specified

6    violations.    In addition, upon information and belief, Defendants omitted an accurate

7    itemization of total hours worked including premiums due and owing for meal and rest

8    period violations, gross pay and net pay figures from Plaintiff and the Class Members'

9    wage statements."    (Complaint, ¶ 40.)    Plaintiff further alleges that, "Defendants have

10    failed to accurately record all time worked."  (Complaint, ¶ 75.)

11        44.    Pursuant to Labor Code § 226, Plaintiff seeks fifty dollars ($50) for the

12    initial pay period in which an alleged wage statement violation occurred and one hundred

13    dollars ($100) per employee for each violation in a subsequent pay period where a

14    violation occurred, not to exceed an aggregate penalty of four thousand dollars ($4,000)

15    for each Class member.  (Complaint, ¶ 78.)

16        45.    The statute of limitations for penalties for failure to provide accurate

17    itemized wage statements under Labor Code is one year, for an action upon a statute for a

18    penalty.    *See* Cal. Civ. Proc. Code § 340(a).    Wage statement claims are properly

19    considered in determining the amount in controversy.    *See, e.g., Muniz, supra,* 2007 WL

20    1302504, *4 (E.D. Cal. 2007); *Helm, supra,* 2008 WL 2002511, *8 (N.D. Cal. 2008).

21        46.    Defendant denies that it failed to provide accurate itemized wage statements

22    to putative Class members.    However, assuming City Driver Class members were not

23    provided accurate itemized wage statements, the total amount of penalties placed in

24    controversy would be **$1,329,700** (i.e., During the period of May 11, 2019 through June 8,

25    2020, Defendant employed 361 City Drivers who received at least one weekly wage

26    statement.  (Pontiff Decl., ¶ 14).  293 of these City Drivers worked 41 weeks (Pontiff

27    Decl., ¶ 16).  Therefore, the amount placed in controversy would be the maximum penalty

28    of $4,000 for each of the 293 City Drivers for a total of **$1,172,000**.  The remaining 68

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

**NOTICE OF REMOVAL BY DEFENDANT**

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

City Drivers (361 - 293) collectively received 1611 wage statements. (Pontiff Decl., ¶ 17.) Each of these City Drivers would claim an initial penalty of $50 for their first allegedly incorrect wage statement, placing in controversy total penalties of **$3,400** [68 x $50] for these initial violations. These City Drivers would also claim a $100 penalty for the remaining 1543 wage statements (1611 - 68), placing in controversy total subsequent penalties of **$154,300** [1543 x $100]. Therefore, the total amount of penalties in controversy would be **$1,329,700** (i.e., $1,172,000 [for City Drivers who worked 41 weeks or more] + $3,400 [initial penalties for City Drivers who did not work 41 weeks or more] + $154,300 [subsequent penalties for City Drivers who did not work 41 weeks or more]).

### d.    Attorneys' Fees

47.    Plaintiff seeks attorneys' fees on behalf of the putative class. (Complaint, Prayer for Relief at p. 16-17.) Attorneys' fees are properly included in the amount in controversy. *See, Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (statutorily-mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes).

48.    When, as here, a plaintiff seeks to recover attorneys' fees as permitted by California law, the court must consider future attorneys' fees when determining the amount in controversy. *Fritsch v. Swift Transportation Company of Arizona, LLC*, No. 18-55746, 2018 WL 3748667 (9th Cir. Aug. 8, 2018). In class action litigation, courts routinely grant attorneys' fees awards that range from 25% to 33% of the settlement or verdict amount. *See, e.g., Hanlon v. Center for Auto Safety*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where range of attorneys' fee award ranged between 25% and more than 40%). Accordingly, including attorneys' fees of 25% is reasonable when calculating the amount in controversy. *See, e.g., Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. 2012) (holding that defendant's inclusion of attorneys' fees to satisfy amount in controversy was

reasonable where defendant's "base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims" asserted by plaintiff.); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *6-7 (N.D. Cal. 2012) (holding that "it was not unreasonable for [Defendant] to rely on" an "assumption about the attorneys' fees recovery as a percentage of the total amount in controversy" and noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'")

49.    Assuming Plaintiff prevailed on a class-wide basis for City Drivers only in this case, the estimated attorneys' fees placed in controversy, based on the foregoing conservative calculations, would be **$1,371,794.24** (i.e., $5,487,176.95 x 25%) [amount in controversy for failure to provide meal and rest breaks, waiting time penalties and wage statement violations] x 25% [benchmark]).

### e.    Summary of Amount in Controversy

In light of the foregoing, Plaintiff's allegations establish an amount in controversy well in excess of the jurisdictional minimum of $5 million for purposes of removal under CAFA. The minimum amount in controversy, using the most conservative possible estimates and as applied to City Drivers only is summarized as follows:

| Claim | Amount |
|---|---|
| Unpaid Meal Period Premiums | $1,599,951.01 |
| Unpaid Rest Period Premiums | $1,599,951.01 |
| Failure to Timely Pay Wages | $957,574.93 |
| Failure to Provide Accurate Itemized Wage Statements | $1,329,700.00 |
| Attorneys' Fees | $1,371,794.24 |
| **Total:** | **$6,858,971.19** |

50.    Accordingly, removal of this action under CAFA is proper under 28 U.S.C. §1332(d).

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

**NOTICE OF REMOVAL BY DEFENDANT**

**g.      Defendant's Calculations Do Not Include Minimum Wage, Overtime or Unreimbursed Expenses.**

51.      Plaintiff alleges that he and the Class members (including City Drivers) regularly performed non-exempt work and thus were subject to California laws regarding overtime compensation (Complaint, ¶ 49).  Plaintiff alleges that he and the Class members "consistently" worked in excess of eight (8) hours in a day and/or forty (40) hours in a week (Complaint, ¶ 50), and more specifically that he and Class members typically worked shifts of about 10 to 13 hours or more per day, 5 days per week.  (Complaint, ¶ 27.) Plaintiff alleges that, notwithstanding, he and Class members were only paid overtime for work hours performed in excess of 40 hours a work week. (Complaint, ¶ 51.)

52.      Defendant's records show that City Drivers worked an average of 45.10 hours per workweek.  (Pontiff Decl., ¶ 13.)

53.      Defendant does not include overtime compensation in its jurisdictional calculations because City Drivers' overtime claims are barred by the California Motor Carrier Exemption set forth in Wage Order 9 (8 Cal. Code Regs. Section 11090(3)(L)). This exemption applies to workers whose hours of service are regulated by: (1) The United States Department of Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of Service of Drivers, or; (2) Title 13 of the California Code of Regulations, subchapter 6.5, Section 1200 and the following sections, regulating hours of drivers.  Here, City Drivers are subject to the Department of Transportation Hours of Service requirements.  (Pontiff Decl., ¶ 3.)  Defendant intends to file a Motion for Partial Summary Judgment regarding the applicability of this exemption to City Drivers.

54.      However, assuming one half (1/2) hour of unpaid overtime wages per workweek (a 10% violation rate) for each putative City Driver Class member, the total amount of unpaid overtime placed in controversy by the Complaint exceeds **$599,907.53.** The average regular hourly rate during the class period was $26.99.  (Pontiff Decl., ¶ 12) If this sum is multiplied by the overtime rate of 1.5 hours, the overtime rate for each hour of alleged unpaid overtime would be $40.48.  Even assuming unpaid overtime of only ½

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

**NOTICE OF REMOVAL BY DEFENDANT**

hour, the amount of overtime compensation placed in controversy for each violation would be $20.24 ($40.48 x .5).  The number of City Driver shifts during the class period was 296,397.  (Pontiff Decl., ¶12.)  Assuming a ten percent (10%) violation rate, the number of shifts with an alleged overtime violation would be 29,639.7 (296,397 x 10%).   Therefore, the amount controversy for each violation would be ($20.24) times the number of violations (29,639.7) for a total of $599,907.53.

55.    Further, although Plaintiff pleads a Sixth Cause of Action for Failure to Reimburse Expenses as Required by Labor Code § 2801 alleging that Defendants failed to reimburse necessary business expenses incurred by Plaintiff and Class Members "for the use of personal cell phones in direct consequence of the discharge of their duties" (Complaint, ¶ 41), Plaintiff does not include any calculations for these alleged damages in establishing the $5,000,000 amount in controversy requirement.

56.    Had Defendant included these amounts in its jurisdictional analysis, the amount in controversy would clearly be significantly higher.  To the extent the Court may not be satisfied that Defendant has met its burden of showing that the amount in controversy exceeds $5,000,000, Defendant respectfully requests the right to supplement this notice to include evidence of these additional sums.

### THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. § 1446 ARE SATISFIED

57.    In accordance with 28 U.S.C. §1446(a), this Notice of Removal is filed in the District in which the action is pending.  The Alameda County Superior Court is located within the Northern District of California.  Therefore, venue is proper in this court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

58.    In accordance with 28 U.S.C. §1446(a), copies of all process, pleadings, and orders served upon Defendant are attached as Exhibits to this Notice.

59.    In accordance with 28 U.S.C. §1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Alameda.  Notice of Compliance shall be filed promptly

afterwards with this court.

60.     As required by Federal Rule of Civil Procedure 7.1, Defendant concurrently filed its Certificate of Interested Parties.

### CONCLUSION

63.     For the foregoing reasons, Defendant hereby removes the above-entitled action to the United States District Court for the Northern District of California.

Dated:  July 9, 2020                      Pamela C. Calvet
                                          Allison C. Eckstrom
                                          Daria Dub Carlson
                                          **BRYAN CAVE LEIGHTON PAISNER LLP**


                                          By:  */s/ Daria Dub Carlson*
                                                Daria Dub Carlson
                                          Attorneys for Defendant
                                          SAIA MOTOR FREIGHT LINE, LLC.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CALIFORNIA 90401

602167400.4

17

**NOTICE OF REMOVAL BY DEFENDANT**